IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

VONDA L. ANDREWS-DALE                                          PLAINTIFF

v.                  Civil No. 10-2180

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                     DEFENDANT

**MEMORANDUM OPINION**

I.      **Factual and Procedural Background**

Plaintiff, Vonda L. Andrews-Dale, brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act").

Plaintiff protectively filed her applications on January 26, 2006, alleging a disability onset date of June 1, 2002, due to mental disorders, fibromyalgia, hearing loss, vision loss, carpal tunnel syndrome, chest pain, arthritis, and pinched nerves. Tr. 12, 183, 187, 205, 231. On the alleged onset date, Plaintiff was thirty six years old with the equivalent of a high school education. Tr. 27, 45, 190, 241, 316. She has past work as a cashier and concession stand operator. Tr. 27, 60-61, 69.

Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 85-92, 95-100. At Plaintiff's request, an administrative hearing was held on May 27, 2008. Tr. 31-63. A supplemental hearing was held on November 19, 2008. Tr. 62-80. Plaintiff was present at both hearings and represented by counsel. The ALJ rendered an unfavorable decision on February 3, 2009, finding Plaintiff was not disabled within the meaning of the Act. Tr. 9-29. Subsequently, the

Appeals Council denied Plaintiff's Request for Review on September 22, 2010, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Plaintiff seeks judicial review of that decision.

## II. Medical History

### A. Patricia Walz, Ph.D.

On March 23, 2006, Plaintiff underwent a mental status examination with Patricia Walz, Ph.D. Tr. 239-245. Plaintiff listed her impairments as arthritis, carpal tunnel syndrome, back problems, memory problems, and trouble tolerating people. Tr. 239. She also reported depression and panic attacks. Tr. 242. Plaintiff was taking no prescription medication, but stated she used marijuana two or three times a week. Tr. 240-241.

On examination, Plaintiff's behavior was notable for run-on speech and a notable paranoid flavor. Tr. 239. Her attitude was cranky and manic. Tr. 242. Thinking was circumstantial. Tr. 242. Plaintiff's concentration was significantly impaired by obsessiveness over past perceived wrongs. Tr. 244. Plaintiff reported depression, but denied suicidal or homicidal ideation. Tr. 242. Dr. Walz estimated Plaintiff's intelligence to be within the low average to average range. Tr. 243. She diagnosed Plaintiff with bipolar disorder, most recent episode manic, personality disorder with schizoaffective and paranoid traits, and cannabis abuse. Tr. 243. Dr. Walz noted that Plaintiff's prognosis without treatment was poor. Tr. 243.

### B. Beth Teegarden, D.O.

On March 25, 2006, Plaintiff underwent a consultative physical examination with Beth Teegarden, D.O. Tr. 246-252. She reported chronic neck pain, back pain with radiation down both legs, carpal tunnel syndrome of both wrists, recent stress incontinence, poor sleep, and a history of

vision problems following a motor vehicle accident in 1992. Tr. 246-247. Plaintiff denied substance abuse, but reportedly smoked two packs of cigarettes per day. Tr. 246.

On examination, Plaintiff had no hearing deficit to normal conversational tone. Tr. 247. Uncorrected visual acuity was 20/20 in the right eye and 20/30 in the left eye. Tr. 247. Heart rhythm and rate were normal, with no murmurs or clicks noted. Tr. 248. Plaintiff had full strength in her extremities, but there was some give way weakness with strength testing of the right upper extremity and some tingling in the right thumb. Tr. 248, 252. Give way weakness was also noted in the right foot. Tr. 248, 252. Plaintiff was able to oppose her thumb to her fingers and manipulate small objects, but stated she could not grasp tools due to pain. Tr. 251. She had full range of motion in her spine, with no tenderness or muscle spasms noted. Tr. 248, 252. Straight leg raising was negative bilaterally. Tr. 248, 252. Plaintiff was neurologically intact. Tr. 248, 252. Dr. Teegarden assessed Plaintiff with neck and back pain, bilateral wrist pain, possibly carpal tunnel syndrome, stress incontinence with coughing, and tobacco abuse. Tr. 248.

   C. Agency Consultants

On June 12, 2006, Laura Lochner, Ph.D., completed a Psychiatric Review Technique Form ("PRTF"), in which she determined Plaintiff's impairments did not meet or equal the criteria for listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders). Tr. 256-283. She found moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. Tr. 280. In a Mental Residual Functional Capacity ("RFC") Assessment, Dr. Lochner found Plaintiff markedly limited in her ability to understand, remember, and carry out detailed instructions and interact appropriately with the general public. Tr. 284-287. She found

Plaintiff was not significantly limited in all seventeen remaining work-related categories. Tr. 284-287. Dr. Lochner determined Plaintiff could perform simple tasks on a routine basis and adapt to simple work situations, but could not work with the general public. Tr. 286.

On March 7, 2007, J.C. Billinghurst, M.D., reviewed Plaintiff's medical records and determined her physical complaints were non-severe. Tr. 310.

### D. Northeastern Oklahoma Community Health Center

Plaintiff was treated at Northeastern Oklahoma Community Health Center for the following impairments: fibromyalgia, psoriasis, possible psoriatic arthritis, adjustment disorder with anxiety, osteoarthritis, peptic ulcer disease (per history), abdominal pain, chronic low back and neck pain, chronic obstructive pulmonary disorder ("COPD"), headaches, weight loss, and dysfunctional uterine bleeding. Tr. 291-300, 307. X-rays of Plaintiff's lumbar spine, performed in May 2006, were unremarkable. Tr. 300. X-rays of Plaintiff's right and left wrist were also unremarkable. Tr. 253. On December 28, 2006, Plaintiff exhibited diffuse tenderness in her lumbar spine and had several trigger points in the suboccipital area of her neck. Tr. 293. She was referred to a rheumatologist to be evaluated for fibromyalgia. Tr. 293. She was also given trials of Tramadol and Meloxicam. Tr. 293. In January 2007, Plaintiff was prescribed Clonazepam and instructed to discontinue Meloxicam. Tr. 291-292.

### E. James D. McKay, D.O.

On January 25, 2007, Plaintiff saw James D. McKay, D.O., for a rheumatologic evaluation. Tr. 302-305, 328-333. Plaintiff reported joint pain, pain between her shoulder blades, sensitivity to touch, fatigue, trouble sleeping, psoriasis of the scalp, and shortness of breath. Tr. 303. On examination, Plaintiff's chest was without rubs, but occasional sonorous rhonchi were noted

bilaterally. Tr. 303. Neurological examination was non-focal with a normal mental status exam. Tr. 303. Articular examination revealed 1+ tender points across the trapezius and paraspinal musculature. Tr. 303. Dr. McKay noted tenderness over each wrist, but no actual synovitis was appreciated. Tr. 303. Passive range of motion was normal in the cervical spine, shoulders, elbows, wrists, hips, knees, and ankles. Tr. 303. There were no signs of rheumatoid arthritis. Tr. 303. Dr. McKay believed Plaintiff's symptoms were most compatible with myofascial pain syndrome involving the trapezius and parascapular musculature posteriorly. Tr. 303. He found no symptoms of inflammatory joint disease or psoriatic arthritis, but noted Plaintiff may have mild evolving osteoarthritis. Tr. 303-304. Dr. McKay diagnosed Plaintiff with myalgias and arthralgias without clinical evidence of inflammatory disease, myofascial pain syndrome, and psoriasis (by history). Tr. 302. He prescribed Lodine and Nortriptyline. Tr. 302. Dr. McKay also noted that he saw no reason for disability, as Plaintiff's presentation and complaints appeared benign in nature. Tr. 304.

 F. R. Mark Guy, M.D.

 On July 3, 2008, Plaintiff saw R. Mark Guy, M.D., for a hearing evaluation. Tr. 311-314. Dr. Guy had no trouble communicating with Plaintiff. Tr. 311. Her ear canals and tympanic membranes were normal in appearance. Tr. 311. There were no signs of eustachian tube dysfunction or middle ear fluid. Tr. 311. Tempanogram results were close to normal. Tr. 311. An audiogram showed mild sensorineural hearing loss on the right and left, worse on the right. Tr. 311. Plaintiff's speech reception thresholds were 15 decibels bilaterally. Tr. 311. Her speech discrimination score was 91% on the right and 81% on the left. Tr. 311. Dr. Guy found that Plaintiff had mild bilateral sensorineural hearing loss involving low frequencies, slightly worse on the right. Tr. 311. He determined Plaintiff might be a candidate for amplification in the right ear and

suggested annual audiograms and hearing protection. Tr. 311.

    G. <u>Larry Vaught, Ph.D.</u>

On July 24, 2008, Plaintiff underwent a psychological evaluation performed by Larry Vaught, Ph.D. Tr. 316-326. Plaintiff reported anxiety, panic attacks, depression, sleep problems, fatigue, social withdrawal, difficulty making decisions, trouble with memory and concentration, poor organization, and some suicidal thoughts without plan or intent. Tr. 316. She also related a history of head injury in 1992, when she fell out of a car and struck the right side of her face. Tr. 316. When asked about substance abuse, Plaintiff stated she abused methamphetamine in 1993, but denied any other substance abuse. Tr. 316. She reportedly smoked three to four packs of cigarettes per day. Tr. 316.

On examination, Plaintiff's thought processes were logical and coherent, although she rambled and tended to be circumstantial and tangential. Tr. 317. Her affect was slightly restricted, and she was plaintive and easily frustrated. Tr. 317. Dr. Vaught noted frequent repositioning, difficulty with manual activities, especially on the left side, and a noticeable limp. Tr. 317. On the Wechsler Adult Intelligence Scale-III, Plaintiff obtained a verbal IQ score of 93, a performance IQ score of 99, and a full-scale IQ score of 96, placing her in the average range of intellectual functioning. Tr. 318. On the Wechsler Memory Scale-III, Plaintiff received low average to average scores. Tr. 318-319. On the Wide Range Achievement Test-III, Plaintiff read on a post high school level, spelled on a high school level, and performed arithmetic on a seventh grade level. Tr. 319. Grip strength testing revealed mild to moderate impairment on the right and moderate to severe impairment on the left. Tr. 320. On the Minnesota Multiphasic Personality Inventory ("MMPI-II"), Plaintiff reported a substantial amount of psychological distress. Tr. 320. Dr. Vaught diagnosed

Plaintiff with depressive disorder, not otherwise specified, and panic disorder with agoraphobia. Tr. 321. He noted that Plaintiff's cognition was intact and she was fairly independent in her activities of daily living. Tr. 321, 325.

In a Mental Medical Source Statement ("MSS"), Dr. Vaught found marked limitation in Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 322-326. He found moderate limitation in Plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and set realistic goals or make plans independently of others. Tr. 322-326. He determined Plaintiff was not significantly limited in the thirteen remaining work-related categories. Tr. 322-326.

      H. <u>Alison Hansen, O.D.</u>

On July 28, 2008, Plaintiff saw Alison Hansen, O.D., for an eye examination. Tr. 315. External, funduscopic, and visual field examinations were normal. Tr. 315. Plaintiff's uncorrected visual acuity was 20/40 in both eyes. Tr. 315. A refractive error was noted in both eyes. Tr. 315.

**III.**     **Applicable Law**

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable

mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that she is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits her physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform her past relevant work; and (5) if the claimant cannot perform her past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given her age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir.

2004).

IV.   **ALJ's Determination**

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since June 1, 2002, the alleged onset date. Tr. 16-17. At step two, the ALJ found Plaintiff suffered from hearing loss, depression, panic disorder with agoraphobia, and osteoarthrosis and allied disorders, which were considered severe impairments under the Act. Tr. 17-18. At step three, he determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 18-19.

At step four, the ALJ found Plaintiff had the RFC to perform a full range of light and sedentary work, except she could walk and stand a combined total of two hours in an eight-hour workday, sit for a combined total of six hours in an eight-hour workday, occasionally reach overhead, use foot pedals, climb ramps or stairs, bend, stoop, crouch, and crawl, but never climb ropes, ladders, scaffolds, or work in environments where she would be exposed to unprotected heights, dangerous equipment, or extreme temperatures. Tr. 19-27. Mentally, the ALJ determined Plaintiff could understand, remember, and carry out simple to moderately detailed instructions, interact with coworkers and supervisors under routine supervision, and remain attentive and responsive in a work setting, but could only interact with the public occasionally, whether it be in person or over the telephone. Tr. 19-27.

With these limitations, the ALJ found Plaintiff could not perform her past relevant work. Tr. 27. However, after receiving vocational expert testimony, the ALJ found jobs existing in significant

numbers in the national economy that Plaintiff could perform.[1]  Accordingly, the ALJ determined Plaintiff was not under a disability from June 1, 2002, the alleged onset date, through February 3, 2009, the date of the decision.  Tr. 29.

**V.    Discussion**

On appeal, Plaintiff contends the ALJ erred by: (1) improperly determining her RFC; and (2) improperly interpreting vocational expert testimony.  *See* Pl.'s Br. 8-15.  For the following reasons, the court finds that substantial evidence supports the ALJ's decision.

A.  RFC Assessment

Plaintiff contends the ALJ's RFC assessment did not properly reflect her mental and physical limitations.  *See* Pl.'s Br. 8-15.  At the fourth step of the evaluation, a disability claimant has the burden of establishing her RFC.  *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).  A claimant's RFC is the most she can do despite her limitations.  20 C.F.R. § 404.1545(a)(1).  The ALJ determines a claimant's RFC based on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."  *Masterson*, 363 F.3d at 737.  The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question."  *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001).  Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination.  *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

---

[1] The ALJ determined Plaintiff could perform the requirements of representative occupations such as clerical mailer, of which there are 7500 jobs regionally and 82,000 jobs nationally, sorter, of which there are 7000 jobs regionally and 85,000 jobs nationally, laundry sorter, of which there are 12,000 jobs regionally and 150,000 jobs nationally, and mail room clerk, of which there are 17,000 jobs regionally and 180,000 jobs nationally.  Tr. 27-29, 71-72.

1. <u>Physical Impairments</u>

Plaintiff contends the ALJ did not properly consider her hand and wrist pain. *See* Pl.'s Br. 12-13. Plaintiff had several consultative evaluations performed. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (it is the ALJ's function to resolve conflicts of opinion among various treating and examining physicians). Dr. Vaught, a psychologist, performed grip strength testing and found mild to moderate impairment on the right and moderate to severe impairment on the left. Tr. 320. Dr. Teegarden noted some give way weakness in Plaintiff's right upper extremity and tingling in her right thumb, but Plaintiff was able to oppose her thumb to her fingers and manipulate small objects. Tr. 248-252. Dr. Teegarden noted the possibility of carpal tunnel syndrome. Tr. 248. However, x-rays of Plaintiff's wrists, performed in May 2006, were unremarkable. Tr. 253. Dr. McKay noted tenderness over Plaintiff's wrists, but he found no signs of synovitis and Plaintiff had full passive range of motion in both wrists. Tr. 303. Dr. McKay found no symptoms of inflammatory joint disease or psoriatic arthritis, but noted the possibility of mild evolving arthritis. Tr. 303-304. He stated he saw no reason for disability, as Plaintiff's presentation and complaints appeared benign in nature. Tr. 304.

The objective evidence of record simply does not support the alleged severity of Plaintiff's hand impairment. *Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (absence of objective medical evidence to support claimant's complaints). Although Plaintiff alleges severe wrist pain, she did not seek continuing treatment for this impairment. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) ("a claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications"). Moreover, Plaintiff was never formally diagnosed with carpal tunnel syndrome or fibromyalgia. Dr. McKay,

a rheumatologist, noted the possibility of *mild* evolving arthritis, but found Plaintiff's complaints "benign" in nature. Tr. 304.

Plaintiff alleges she could not afford treatment or medication. However, she evidently could afford to purchase marijuana and tobacco on a regular basis. Tr. 22, 26, 48, 316. Furthermore, Plaintiff has not sought treatment at any low-cost clinics or charitable organizations in the area, nor has she provided evidence that she was denied medical care due to her financial condition. *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992). For the aforementioned reasons, the court finds that substantial evidence supports the ALJ's physical RFC determination.

### 2. Mental Impairments

The ALJ did not err in his consideration of Plaintiff's mental impairments. Despite Plaintiff's contention, the ALJ was not required to adopt Dr. Vaught's MSS statement in its entirety. With the exception of one marked finding, Dr. Vaught's MSS indicated mild to moderate limitations as a whole. Tr. 322-324. Furthermore, Plaintiff has no history of formal mental health treatment and has taken no prescription medication. *See Kirby v. Astrue*, 500 F.3d 705, 708-09 (8th Cir. 2007) (claimant had not sought formal treatment by a psychiatrist, psychologist, or other mental health care professional). At the administrative hearing, Plaintiff's counsel even acknowledged that Plaintiff believed her problems were primarily physical. Tr. 40. For these reasons, substantial evidence supports the ALJ's mental RFC determination.

### B. Vocational Expert testimony

Plaintiff argues that the ALJ misinterpreted the vocational expert's testimony. *See* Pl.'s Br. 9-12. A hypothetical question posed to the VE is sufficient if it sets forth impairments supported by substantial evidence and accepted as true by the ALJ. *Goff v. Barnhart*, 421 F.3d 785, 794 (8th Cir.

2005) (citing *Hunt v. Massanari,* 250 F.3d 622, 625 (8th Cir. 2001)). The ALJ may properly exclude any alleged limitation or impairments he rejects as untrue or unsubstantiated. *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001).

Plaintiff's allegation of error is correct. The ALJ identified four jobs Plaintiff could perform within her RFC: clerical mailer, sorter, laundry sorter, and mail room clerk. Tr. 28-29. However, two of these positions, laundry sorter and mail room clerk, should have been eliminated because they exceed the standing and walking restrictions of Plaintiff's RFC. Tr. 72-73. Despite the ALJ's error, two jobs remain intact: clerical mailer (7500 jobs regionally and 82,000 nationally) and sorter (7000 jobs regionally and 85,000 nationally). Tr. 28. Since these remaining jobs exist in significant numbers in the national economy and do not exceed Plaintiff's RFC, the ALJ's error was harmless.

Plaintiff also contends the vocational expert should have used an Arkansas-specific statistic rather than a regional figure.[2] *See* Pl.'s Br. 10. This argument has no merit. In *Matthews v. Eldridge*, 424 U.S. 319, 336 n. 14 (1976), the Supreme Court, citing 42 U.S.C. § 423(d)(2)(A), determined that work which "exists in the national economy" is defined as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Thus, a vocational expert is not required to specify the number of jobs in a certain state in order to meet the Commissioner's step-five burden.

Here, the ALJ's hypothetical to the VE was proper, as it mirrored the limitations ultimately adopted by the ALJ. *Roe v. Chater*, 92 F.3d 672, 676 (8th Cir. 1996). For these reasons, substantial evidence supports the ALJ's step five determination.

---

[2] The vocational expert defined "regionally" to include Texas, Oklahoma, Arkansas, Louisiana, and New Mexico. Tr. 71.

**VI.     Conclusion:**

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed. Accordingly, Plaintiff's complaint should be dismissed with prejudice.

IT IS SO ORDERED this 15th day of February 2012.

*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE